[No. 11890. In Bank. — March 29, 1888.]

## AUGUST HEILBRON ET AL., RESPONDENTS, v. FOWLER SWITCH CANAL COMPANY, APPELLANT.

APPEAL — JUDGMENT — DISMISSAL. — An appeal from a judgment which is not taken within one year from the date of its entry must be dismissed.

RIPARIAN RIGHTS — INJUNCTION — UNLAWFUL DIVERSION — INCONSIDERABLE INJURY. — The injury caused to a riparian proprietor by the unlawful diversion of the waters of a stream adjoining his land for a distance of thirty miles cannot be deemed inconsiderable merely because it is incapable of ascertainment, or of being estimated in damages.

ID. — INJURY INCAPABLE OF ASCERTAINMENT. — A riparian proprietor is entitled to an injunction to restrain the unlawful diversion of the waters of a stream adjoining his land, although the injury caused by the diversion is incapable of ascertainment, or of being estimated in damages.

ID. — JUSTIFICATION OF DIVERSION — UNLAWFUL APPROPRIATION. — A party claiming a certain quantity of the waters of the stream, adversely to the riparian proprietor, under an unlawful appropriation thereof, cannot justify his diversion by showing that there was no appreciable difference in, the quantity of the water flowing in the stream at a time when he took the water, and at a time when he did not.

ID. — UPPER RIPARIAN PROPRIETOR CANNOT AUTHORIZE UNLAWFUL DIVERSION. — A riparian proprietor cannot, as against a lower proprietor, authorize a corporation to take water from the stream to be conducted to a distance and there sold.

ID. — TENANT MAY ENJOIN DIVERSION. — A tenant for years of land bordering upon a natural stream may enjoin the unlawful diversion of the waters thereof, the injunction necessarily becoming inoperative at the termination of his estate.

ID. — PRIOR ACTION WHEN NOT PLEADABLE IN ABATEMENT. — An action to restrain the diversion of the waters of a stream, and for the recovery of damages, cannot be pleaded in abatement of a subsequent action brought by the same plaintiffs and others against the same defendant, in which no damages are asked, and in which the complaint charges the actual diversion and threats to continue the same at a date subsequent to the bringing of the first action.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Edward J. Pringle, Garber & Bishop*, and *E. C. Winchell*, for Appellant.

The injury in the present case being inappreciable, the plaintiffs are not entitled to an injunction. (*Thorn* v.

*Sweeney*, 12 Nev. 251; *Bigelow* v. *Hartford Bridge Company*, 14 Conn. 565; 36 Am. Dec. 502; *Bassett* v. *Salisbury Mfg. Co.*, 43 N. H. 569; 82 Am. Dec. 179; *Brightman* v. *Inhabitants*, 7 Gray, 271; *Jerome* v. *Ross*, 7 Johns. Ch. 331; 11 Am. Dec. 484; *Blake* v. *Brooklyn*, 26 Barb. 301; *Jordan* v. *Lanier*, 73 N. C. 90.)   The pendency of the former suit should abate the present action. (Bennett on Lis Pendens, sec. 375; *Greshon* v. *Lyons*, 16 Barb. 461; *Montgomery* v. *Harrington*, 58 Cal. 270; *Hurd* v. *Moiles*, 28 Fed. Rep. 899.)

*Brown & Daggett*, for Respondents.

The injury complained of is continuing, and the proper remedy is by injunction to restrain it.   (Code Civ. Proc., sec. 731; *Parke* v. *Kilham*, 8 Cal. 77; 68 Am. Dec. 310; *Ferrea* v. *Knipe*, 28 Cal. 340;  87 Am. Dec. 128; *Lux* v. *Haggin*, 69 Cal. 256; Wood on Nuisances, 2d ed., sec. 364; Angell on Watercourses, 7th ed., secs. 444–446; *Webb* v. *Portland Mfg. Co.*, 3 Sum. 189; *Moore* v. *Clear Lake Water Co.*, 68 Cal. 150; *Corning* v. *T. & I. Factory*, 40 N. Y. 191; *Stanford* v. *Felt*, 71 Cal. 249.)

TEMPLE, J. —The facts constituting the plaintiffs' case in this action are pretty much the same as in the case of *Heilbron* v. *Last Chance Water Ditch Company*, recently decided by us.  (*Ante*, p. 117.)

Plaintiffs are in possession of the rancho Laguna de Tache, containing about fifty thousand acres of land, under a lease for ten years, with the privilege of purchasing during their term.   Kings River forms a boundary of this farm for thirty miles, and dividing at a point within this distance, one channel of the river called Cole Slough flows through the rancho for a distance of ten miles.

Plaintiffs claim under a Mexican grant, made January 10, 1846.   The claimant filed his petition for the confirmation of his title with the land commissioners to

ascertain and settle private land claims in California, February 15, 1853, and, the title being confirmed, a patent was issued for the same March 6, 1866.

Kings River rises in the Sierra Nevada Mountains, and carries at its lowest stages only about one thousand cubic feet of water per second, and at the highest stages, during the time of melting snows in the spring and summer, a much larger volume, sometimes as much as fifteen thousand cubic feet per second. During ordinary stages of water, Cole Slough carries the larger portion of the waters of Kings River, and during the period of low water all that reaches the point of divergence.

For more than two years before the bringing of this action the plaintiffs had maintained and cultivated about three thousand acres of alfalfa upon the land, and to irrigate the alfalfa, water their stock, and increase the productiveness of their land, they had built a dam in Cole Slough, and constructed canals and ditches leading out of Cole Slough, conducting the water over their land, increasing its productiveness, and furnishing water for their cattle, amounting to ten thousand head, which were entirely dependent upon the river for water to drink.

The defendant is a corporation, organized to appropriate and divert the water of Kings River, and avers in its answer that it has taken all the steps required under the Civil Code to authorize it to appropriate fifteen hundred cubic feet per second, flowing continuously, and at great expense has constructed a canal with a capacity of from one thousand to fifteen hundred cubic feet per second, sufficient for irrigating two hundred and forty thousand acres of land. That the stockholders own about sixty thousand acres of land along the canal and its branches.

The land owned by the stockholders is a long distance from the river, none of them being riparian owners, and

no portion of the water would ever find its way again into the river.

It was found as a fact that the defendant threatens to, and unless enjoined will, divert three hundred cubic feet of water per second, and as much as fifteen hundred cubic feet of water per second when there is the last-named quantity flowing in the river at the head of defendant's canal, and the rancho Laguna de Tache will be deprived of a material and substantial quantity of water; that plaintiffs will be deprived of the use of water with which to irrigate said land, their cattle of sufficient quantity to drink, and that great damage and injury will occur annually, and of such extent that the same cannot be justly computed or estimated, and an action for damages would not afford an adequate remedy.

The defendant does not deny that it threatens to divert from the stream one thousand cubic feet of water per second, but denies that it proposes to take all the water of Kings River, or a sufficient quantity to injure the lands of plaintiffs, and alleges that defendant claims the right of withdrawal of water only in proportion to the supply which may be flowing in the river, and does not intend to divert the whole amount provided in its articles of incorporation, nor three hundred cubic feet, as alleged in the complaint.

The answer also avers that defendant was incorporated for the purpose of acquiring the title to one thousand cubic feet of water per second, which amount they purchased from one Dusy, and that since they have taken under the code five hundred additional cubic feet per second, and that it has commenced the construction of a suitable dam and head-gate sufficient to divert that amount of water, the canal being eighty feet wide and five feet deep, and had so far completed the work as to be able to divert fifteen hundred cubic feet of water per second, "so appropriated and owned by defendant, into its canal, and to conduct the same along and through its

said canal a distance of twenty-one miles," and that they have expended in its construction one hundred and ten thousand dollars.

Plaintiffs recovered judgment, and the defendant appeals from the judgment, and from an order denying its motion for a new trial. The appeal from the judgment, not having been taken within one year, must be dismissed.

On the trial the defendant attempted to prove its right as an appropriator by showing its compliance with the provisions of the code. This evidence was excluded, on the objection of plaintiffs, and defendant excepted.

The court also excluded, against the exception of the defendant, evidence tending to show that there was no appreciable difference in the quantity of water in Kings River at the time when defendant was taking water and at a time when it was not taking water from the river. In like manner, the court refused to permit the defendant to show that its officers had instructed its head gate-keeper that, whenever the water was low in the river, and there could be any cause of complaint by any one, or it would make an appreciable difference in the quantity of water in the river, he was not to take water, but to shut down his gate, and only take water when it would make no appreciable difference in the quantity flowing in the river.

The first point made by appellant is, that where a party suffers no appreciable injury, and is threatened with none, he cannot invoke the aid of a court of equity to restrain a trespass, but will be left to his remedy at law.

Perhaps this proposition might be admitted without affecting the merits of this appeal.

It does not follow, because the injury is incapable of ascertainment, or of being computed in damages, and therefore only nominal damages can be recovered, that it is trifling or inconsiderable. It is doubtful if it can

properly be said that there is any evidence in the case which tends to show, or if that which was offered would have tended to show, that the injury to plaintiffs was inconsiderable; that it was unascertainable, and in that sense inappreciable, may be a good reason why an injunction should issue.

This question is, however, not an open one in this state, but has been repcatedly passed on and settled in unmistakable terms. (*Lux* v. *Haggin*, 69 Cal. 258; *Moore* v. *Clear Lake W. Co.*, 68 Cal. 150; *Stanford* v. *Felt*, 71 Cal. 249; *Parke* v. *Kilham*, 8 Cal. 77; 68 Am. Dec. 310; *Ferrea* v. *Knipe*, 28 Cal. 341; 87 Am. Dec. 128.)

No doubt there are cases in which a court will refuse to interfere by injunction to prevent a trespass, where it can see that the injury will be slight, and the injunction may work great injury. Here the defendant professes to take from plaintiffs their property, really upon the plea that it is worth but little to the plaintiffs, and much to the defendant. It is not an ordinary trespass. It is a perpetual taking of the property of the plaintiffs,—a continuous nuisance, which may ripen into a right unless prevented.

The injury is one, also, which, in its nature, cannot be estimated. In the recent case of *Heilbron* v. *Last Chance Company* it was said: "The flow of the water of a stream, whether it overflow the banks or not, naturally irrigates and moistens the ground to a great and unknown extent, and thus stimulates vegetation, and the growth and decay of vegetation add, not only to the fertility, but to the substance and quantity of the soil."

If this be so,—and it cannot be doubted,—it is obvious that in a climate like that where this land is situated, the benefit derived from a flow of water for thirty miles along its boundary, and ten miles through it, cannot be inconsiderable, but yet the extent of benefit must ever be an unknown quantity.

The defendant here states that the channel of the

river above and along this land is deep, and therefore at times of ordinary flow the seepage cannot be great. If so, it must be important to plaintiffs that the channel should carry a full stream, and evidently at such times the percolation would be increased.

2. The right claimed by the defendant is not to appropriate the surplus waters of extraordinary floods, when the flow is more destructive than useful. It claims as an appropriator a certain quantity of water, adversely to the riparian proprietor; and if the claim be valid, it may be asserted at any stage of the water. But the rights of the riparian proprietor do not depend upon the quantity of water flowing in the stream. Nor can that flow be said to be an extraordinary flood which can be counted upon as certain to occur annually, and to continue for months. The defendant has no reservoir to retain the surplus waters of casual and unusual freshets, and its works would be of little value if its dependence were only upon such waters.

And certainly it would be a poor protection to the plaintiffs to have to depend upon the keeper of the headgate of defendant to take only a proportionate amount of water, or to take water only when it could be done without injury to plaintiffs. There was no error in excluding the offered testimony.

We see nothing in the suggestion that defendant is presumably the licensee of the United States, and that the United States, being an upper riparian proprietor, could take a reasonable quantity of water as against the lower riparian owner.

A riparian owner may not authorize, as against a lower proprietor, a company to take water from the stream, to be conducted at a distance and sold.

We see no occasion to discuss the question as to whether the river is navigable or not. In either event the result would be the same. The riparian owner on a non-tidal, navigable stream has all the rights of a ripa-

rain owner not inconsistent with the public easement. (*Brown* v. *Chadbourne*, 31 Me. 9; 50 Am. Dec. 641; *Moore* v. *Sanborne*, 2 Mich. 519; 59 Am. Dec. 209; Wood on Nuisances, sec. 485; *Smith* v. *City of Rochester*, 92 N. Y. 463; 44 Am. Rep. 393; *Woodruff* v. *N. B. G. M. Co.*, 9 Saw. 441.)

Beside, Cole Slough is not claimed to be a navigable stream. The right of the state to interfere with the flow there would certainly be limited to the interest of navigation.

The estate of the plaintiffs is sufficient to enable them to maintain this action. They were lessees for a term of ten years, with the privilege of purchasing during that time. If they fail to perfect the purchase, the fact that the injunction is in form perpetual cannot injure the defendant. If the estate which the injunction was designed to protect cease to exist, there would be no one to enforce the judgment, for there would be no one in privity with the plaintiffs. Practically, it would cease to exist.

The plea in abatement cannot be sustained. The same plaintiffs, excepting only the representatives of the estate of Poly, commenced a suit for a similar purpose against this defendant, but in that suit claimed damages. That suit is still pending, and in it defendant has appeared and answered.

Originally the parties to the two suits were precisely the same, but after the plea in abatement was filed, the plaintiff, by leave of the court, amended, making the representatives of Poly co-plaintiffs.

Now, the action differs from the former one, in that the plaintiffs are not entirely the same, and no judgment for damages is asked, and the last complaint charges the actual diversion, and the threats to continue at a date subsequent to the bringing of the first action. Considered merely as a matter of amendment, the court properly allowed it. The plea in abatement is

not favored, and the fact that the parties are not the same justifies the ruling of the court below.

The appeal from the judgment is dismissed, and the order denying the motion for a new trial is affirmed.

McKINSTRY, J., McFARLAND, J., THORNTON, J., and SHARPSTEIN, J., concurred.

Rehearing denied.